UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY SUE JIDAS,                          Case No. 17-14198

       Plaintiff,                          Judith E. Levy
v.                                                          United States District Judge

COMMISSIONER OF SOCIAL                Stephanie Dawkins Davis
SECURITY,                                         United States Magistrate Judge

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 14)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On December 28, 2017, plaintiff Kimberly Sue Jidas filed the instant suit.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Judith E. Levy referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying Jidas's claim for

disability benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 13, 14).  Jidas also filed a reply in support of her

motion.  (Dkt. 15).

### B.   Administrative Proceedings

Jidas filed an application for a disability insurance and period of disability benefits on April 2, 2015, alleging disability beginning on July 31, 2010.  (Tr. 10).[1] The claim was initially disapproved by the Commissioner on June 2, 2015.  *Id.* Jidas requested a hearing and on July 12, 2016, she appeared with counsel, before Administrative Law Judge ("ALJ") Martha M. Gasparovich, who considered the case *de novo*.  (Tr. 33-54).  In a decision dated October 6, 2016, the ALJ found that Jidas was not disabled.  (Tr. 7-19).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 6, 2017, denied Jidas's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Jidas was born in 1963 was 49 years old on the date the application was filed.  (Tr. 19).  She has past relevant work as a department manager, which is

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

skilled and medium.  *Id.*  Jidas alleges that she cannot work full-time because of

her thyroid cancer, chronic idiopathic neutropenia, leukopenia, chronic fatigue,

fibromyalgia, numerous environmental and food allergies, and arthritis in her neck

and back.  (Tr. 14).  She lives with her husband.  (Tr. 45).

The ALJ applied the five-step disability analysis and found at step one that

Jidas had not engaged in substantial gainful activity from her alleged onset date

through the date last insured (DLI), December 31, 2012.  (Tr. 12).  At step two, the

ALJ found that Jidas's history of papillary thyroid cancer, iron deficiency anemia,

chronic leukopenia, seasonal allergies, and degenerative disc disease were "severe"

within the meaning of the second sequential step.  (Tr. 12).  However, at step three,

the ALJ found no evidence that her impairments singly or in combination met or

medically equaled one of the listings in the regulations.  (Tr. 13).  Thereafter, the

ALJ assessed Jidas's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find
> that, through the date last insured, the claimant had the
> residual functional capacity to stand and/or walk no more
> than 6 hours in an eight-hour workday; sitting was
> unlimited; lift no more than 20 pounds occasionally and
> 10 pounds frequently; stoop, climb, balance, crouch,
> s11uat, crawl, or kneel occasionally; never climb ropes,
> scaffolds, or ladders; avoid all hazards such as but
> not limited to open bodies of water, open flames, moving
> machinery, sharp objects, and unprotected heights; and
> needed a clean air environment free from concentrated
> levels of dust, fumes, chemicals, gases, and other
> airborne irritants.

(Tr. 13).  At step four, the ALJ found that Jidas was unable to perform her past relevant work.  (Tr. 18).  At step five, the ALJ denied benefits because she found that there were jobs that exist in significant numbers in the national economy that Jidas can perform and thus, she was not disabled through her last date insured of December 31, 2012.  (Tr. 18-19)

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard

4

or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

5

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)

("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any

point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

8

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Treating Physician Rule

Jidas first argues that the ALJ erred by failing to give controlling weight to the opinions of her treating physician and by not giving adequate reasons for not doing so.  According to Jidas, her medical records are full of blood work showing the effects from her chronic leukopenia and neutropenia, resulting in refractory fatigue, muscle aches, malaise, poor concentration and poor physical and cognitive stamina.  (Tr. 425-426, Dr. Moscovic's 6/6/16 Medical Source Statement).  Jidas has seen Dr. Moscovic 40 to 50 times since January of 2007, her conditions cause moderate to severe pain generally, and exacerbations can be so severe she becomes bedbound.  (Tr. 425-426).  Dr. Moscovic further explained that too much activity can cause an unpredictable crash of pain and fatigue and that Jidas suffers from moderately severe exacerbations on a regular basis.  (Tr. 426).  Dr. Moscovic

opined that Jidas has had these impairments at the level he indicated for approximately five years and there is no realistic expectation for her to engage in meaningful employment due to the inability to perform even sedentary work activities. (Tr. 426-428). Jidas also argues that it was "unfair" for the ALJ to categorize her testimony that she is "doing better" as a statement that she is able to return to full activity, including gainful employment. Jidas urges the court to reject the ALJ's inference that a few simple activities support a conclusion that she can perform work on a sustained basis. According to Jidas, this inference is not supported by any of the evidence of the record, including the opinions of Dr. Moscovic and Jidas's reports and testimony. Jidas also argues that the ALJ, in giving Dr. Moscovic's opinion less than controlling weight, did not apply the factors in 20 C.F.R. § 404.1527 in determining what weight to give the opinion.

The Commissioner counters that the ALJ's finding is supported by substantial evidence because Dr. Moscovic's pre-DLI treatment notes do not substantiate his opinions. Dr. Moscovic found at appointments on October 30, 2010, November 10, 2010, December 1, 2010, January 12, 2011, and May 9, 2011, that Jidas was alert and oriented to three spheres, her neck was non-tender, she moved all her extremities well with no gross restrictions or muscle weakness, and she had full range of motion in her extremities. (Tr. 302, 307, 312, 316, 335). Dr. Moscovic observed on October 20, 2011 that Jidas was doing well overall, she was

10

alert and oriented, and her neck was non-tender (Tr. 290-291).  Further, Dr. Moscovic determined on January 2, 2012, that while there was spinal tenderness, Jidas had normal strength, her toe and heel walking was normal, her straight leg raising was negative, she could move all her extremities well, she had no gross restrictions or muscle weakness, and her extremity range of motion was full.  (Tr. 286-287).  The Commissioner also points out that Dr. Moscovic's assessment did not list any objective medical findings that supported his conclusion.  (Tr. 425-428).

The Commissioner also maintains that the ALJ did not ignore Jidas's chronic leukopenia or the laboratory results in the record.  Rather, the ALJ found that her chronic leukopenia was a severe impairment.  (Tr. 12).  The ALJ went on to discuss Jidas's testimony about her blood work, as well as her June and October 2010 and July 2011 appointments with Dr. Jaiyesimi, where her laboratory results were stable/her blood work was normal.  (Tr. 14-15 citing Tr. 213, 216, 218).  The ALJ concluded that Jidas's laboratory results were stable and within normal limits (Tr. 16), a finding that she does not challenge.  The Commissioner maintains that Jidas fails to identify any evidence to support her argument that a finding of disability is mandated because Dr. Moscovic's opinion is supported by acceptable clinical and other laboratory techniques and is consistent with other substantial evidence in the record.

The Commissioner disputes Jidas's charge that ALJ should not have relied on her statement that she was doing better to find that she was able to perform gainful employment.  According to the Commissioner, the ALJ did not equate Jidas's reports that she was doing well with an ability to perform full-time work. (Tr. 17).  Rather, the ALJ permissibly contrasted Jidas's report of her symptoms to Dr. Moscovic with his opinion and found that they were not consistent (Tr. 17). *See West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 697 (6th Cir. 2007).

As to Jidas's claim that the ALJ failed to consider the regulatory factors in evaluating Dr. Moscovic's opinion, the Commissioner points out that the ALJ did in fact consider the regulatory factors, as she specifically discussed the treatment relationship, the doctor's role as a primary care physician, and whether the opinion was consistent with Dr. Moscovic's treatment notes and supported by other evidence in the record.  (Tr. 17).  Finally, while Jidas alleges that the ALJ ignored the progression of her condition, the ALJ specifically found that there was no evidence that her condition worsened before her date last insured (Tr. 17), and Jidas has failed to present any evidence to rebut the ALJ's conclusion.

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2).  Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion.  The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms."  *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the

supportability of the treating physician's opinion or its consistency with other evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).  In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless.  391 Fed. Appx. at 440-41.  The court found that the ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all, when the ALJ explained that the state agency physicians found that the plaintiff did not have a "diminished capacity for lifting/carrying."  *Id*.  And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his ability to sit was limited, other medical evidence showed that he could stand and sit for six hours out of eight.  *Id.* at 441.  Further, the plaintiff's own statements undermined the doctor's opinion.  *Id.*

Dr. Moscovic provided a Mental Medical Source Statement on June 6, 2016 in which he indicated that Jidas suffered from multiple conditions that contribute to her total disability and despite suffering for several years with these conditions, she

has continued to seek employment and taken pride in her resolve to re-enter the

work force despite unresolved symptoms of fatigue, malaise, and generalized pain.

(Tr. 425).  He opined that her condition has continued to progressively worsen and

that he fully supports her permanent disability application.  He concluded that her

condition will persist lifelong and that he recommends totally disability.  *Id*.  Dr.

Moscovic opined that Jidas's moderately severe pain causes her to become

bedridden, have difficulty managing activities of daily living, and too much

activity can cause her to "crash" because of increased pain and fatigue.  (Tr. 426).

Dr. Moscovic opined that Jidas cannot perform any sedentary or light work.  (Tr.

427).  He also stated that Jidas's impairment has been at this level for five years, or

since 2011.  (Tr. 428).

The ALJ analyzed Dr. Moscovic's opinion as follows:

> I have fully considered Dr. Moscovic's opinions. I give
> them some weight because he has been the claimant's
> treating primary care physician since 2007 and did treat
> her on several occasions during the alleged period of
> disability and his more recent treatment records support a
> progressive worsening of the claimant's symptoms over
> time. However, I cannot give his opinions great weight
> with respect to the issue of disability prior to the
> claimant's date last insured. His progress notes do not
> support the extreme limitations he identified in the
> questionnaire. As discussed above, his records show that
> the claimant's fatigue was successfully managed with
> Adderall. In fact, within a few months of first
> complaining of fatigue, she reported that she was "better"
> and "doing well" (see Exhibit 3F at pages 42, 51, and
> 58). Dr. Moscovic's notes show that she continued to do

well with no significant complaints through the date last
insured (see Id. at pages 26, 37, and 72). Dr. Moscovic
also fails to cite any objective clinical or laboratory
findings to support the extreme limitations he identified.
Indeed, his progress notes through the date last insured
do not contain abnormal findings on physical
examinations. On the contrary, he routinely found that
the claimant was alert and oriented with full range of
motion of all extremities, normal gait, and no weakness
(see Id. at pages 22, 27, 38, 44, 49, 52, and 74). Lastly,
Dr. Moscovic's notes do not contain prior consistent
reports of adverse medication side effects through the
date last insured. Rather, the claimant denied side effects
of Adderall, which she used successfully to combat
fatigue (see Id. at page 42). For all of these reasons, Dr.
Moscovic's opinions are given only some weight, but not
great weight.

(Tr. 17).  The ALJ gave Dr. Moscovic's opinion only some weight because it was

not supported by his treatment notes and he failed to cite any objective or clinical

findings to support the limitations.  (Tr. 17).  Having analyzed the inconsistencies

between Dr. Moscovic's opinion and the other evidence in the record in the

decision, the ALJ did not err in determining that the opinion was not entitled to

controlling weight.  *See Wilson*, *supra*.  Indeed, in discussing the inconsistency and

lack of supportability between Dr. Moscovic's opinion and the medical records

pre-dating Jidas's DLI, the ALJ attacked both the consistency and supportability of

the opinion, as discussed more fully below.

The ALJ accurately observed that Dr. Moscovic's opinion was inconsistent

with the other record evidence, as the record reflects that Jidas's impairments were,

16

in fact, not as severe or symptomatic before the DLI as when he issued his June 2016 opinion.  At an office visit with Dr. Jaiyesimi on June 25, 2010 just one month before her alleged onset of disability, she reported that she was "feeling well but is still a little bit tired."  (Tr. 212).  At that time, her examination was within normal limits, she was in no distress, had no focal neurological deficits, had no edema, and had normal gait, range of motion, strength, and stability.  (Tr. 213).  Her blood work was also stable.  *Id*.  At her next follow-up appointment with Dr. Jaiyesimi three months later, she related having felt "run down" for a bit due to a viral infection that resolved with a Medrol dose Pak.  (Tr. 215).  Again, her complete examination was essentially normal, and her laboratory results were stable.  (Tr. 216)

In November 2010, Jidas visited Dr. Moscovic for complaints of fatigue. (Tr. 315).  There were no abnormal findings.  He prescribed Ritalin.  Jidas did not notice an improvement in fatigue after three weeks, so he prescribed Adderall instead.  (Tr. 311, 313).  Within one month, Jidas reported that she was doing better.  (Tr. 306).  At her follow-up appointment with Dr. Moscovic on January 12, 2011, she stated that she was doing well, was better with Adderall and had no side effects from the medication.  *Id*.  She also stated that her myalgias/arthralgias were better.  *Id*.  Similarly, when she visited Dr. Edelson in June 2011, she told him she had been feeling generally well and that she had a good energy level.  (Tr. 255).

17

She denied myalgias or arthralgias and physical examination was normal. *Id*.

When she saw Dr. Jaiyesimi the following month, she indicated that she was

feeling well, stating to him that she was "doing much better" and that her "sense of

well-being was good." (Tr. 217). Her examination and blood work were normal.

(Tr. 218). In October 2011, Jidas visited Dr. Moscovic for a follow-up for chronic

fatigue, but she reported that she was doing well overall. (Tr. 290).

Two months later in January 2012, Jidas returned to see Dr. Moscovic with

complaints of a one-week history of back pain following a motor vehicle accident a

month earlier. (Tr. 285, 299). She rated the pain as an 8/10 in severity, but said

that she could walk for 15 to 30 minutes at a time and sit for 30 to 60 minutes at a

time. (Tr. 285). She also told Dr. Moscovic that she had a 14-month-old

granddaughter whom she lifted repeatedly. *Id*. Her physical examination was

normal except that she had tenderness over the right lumbosacral region and tight

hamstrings. (Tr. 287). She was given an intramuscular injection and advised to

take Tylenol and/or Motrin and do gentle range of motion exercises. *Id*.

In October 2012, just two months before her date last insured, Jidas had her

annual physical with Dr. Moscovic. (Tr. 336). She reported muscle aches,

arthralgias, joint pains, and fatigue, but denied exercise intolerance and her

physical examination was entirely normal. She appeared "healthy" and in no

distress. (Tr. 336, 338). She was continued on Adderall and pain medication as

needed.  No specific follow up was recommended.  (Tr. 348-349).  Into February 2013 (less than two months post-DLI), Jidas reported generally feeling well and having a good energy level but having myalgias and arthralgias.  (Tr. 253).

In contrast, Jidas's medical records that are more far removed from her DLI of December 31, 2012 reveal a worsening of her symptoms.  For example, in June 2014, she reported exercise intolerance and more fatigue over the last year.  (Tr. 266).  In July 2014, she indicated that she had been "profoundly fatigued" and was "having trouble on exertion at times."  (Tr. 220).  In June 2016, Jidas reported exercise intolerance, palpitations, muscle aches, weakness, joint pain, numbness, dizziness, headaches, fatigue, and sleep disturbances.  (Tr. 431).  In November 2015, Jidas had positive tender points, exercise intolerance, muscle aches and weakness, and joint pain.  (Tr. 420-421).  Accordingly, in the view of the undersigned, the ALJ accurately observed that Dr. Moscovic's opinion was inconsistent with the medical evidence in the record *before* Jidas's DLI and Dr. Moscovic's opinion that Jidas was impaired as set forth in his June 2016 for the prior five years is not supported by his treatment notes and the other medical evidence of record for that entire time frame.

The medical and other evidence outlined above provides substantial evidence in support of the ALJ's determination that Dr. Moscovic's opinion is entitled to less than controlling weight.  Having discussed the medical evidence

which contradicts and is inconsistent with Dr. Moscovic's opinion, the ALJ provided good reasons for the weight determination.  While the ALJ did not specifically address the nature and extent of the treating relationship, or any specialization in which Dr. Moscovic's practices, this omission is harmless.  As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times."  In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis.  *Id.* at 804-05.  As long as the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless.  As demonstrated above, the goal of the regulation has been met here. The reasons for giving Dr. Moscovic's opinion only some weight are sufficiently clear and well-supported by substantial evidence.

>           2.      Examination of Subjective Symptoms

Jidas also contends that the ALJ failed to follow the guidelines set forth in SSR 96-7p.  Jidas contends that the blood work that Dr. Moscovic and others have used to diagnose her immune mediated cyclic neutropenia and chronic leukopenia provide the required objective evidence of a medical condition which would cause

pain and fatigue. Having met this threshold obligation, Jidas maintains that she is entitled to rely exclusively on subjective evidence to prove the second part of the test, that is that her pain and fatigue is so continuous and/or so severe that it prevents her from working a full 8-hour day. *Hines v. Bernhardt*, 453 F3d, 559 (4th Cir. 2006); SSR 96-7p.

Jidas says that she unequivocally testified that she could not keep up with work due to pain, fatigue and weakness associated with her conditions. (Tr. 39). She also testified that even when she paces herself to nothing over 15 to 30 minutes of activity, she may have episodes which would cause her to be in bed for several days due to fatigue and pain. (Tr. 39). Jidas explained that she limits any tasks to 20 to 30 minutes per day before needing a significant break, noting her frustration over the difficulty to keep her house clean, gardening or even cook dinner for her family. (Tr. 45). She also testified that she has difficulty sleeping due to pain and takes frequent naps throughout the day as a result of her fatigue. Dr. Moscovic, who has seen claimant some 40 to 50 times since January of 2007 also relates that too much activity can cause Jidas an unexpected unpredictable crash of pain and fatigue and that claimant suffers from moderately severe exacerbations on a regular basis. (Tr. 424-428). Accordingly, Jidas contends that she set forth by objective evidence a condition reasonably expected to cause disabling pain by well recognized diagnostic techniques (blood tests) and her

testimony and that of her treating physician that it prevents the claimant from working a full 8-hour day, a finding of disability is mandated.

The SSA issued Social Security Ruling 16-3p concerning treatment of a claimant's subjective complaints, assigning it an effective date of March 16, 2016 and superseding SSR 96-7p. *Ramsey v. Comm'r of Soc. Sec*., 2018 WL 656029, at *8, n.7 (N.D. Ohio Feb. 1, 2018). Thus, SSR 16-3p was effective months before the hearing and decision dates in this case. The Sixth Circuit has described the thrust of SSR 16-3p as merely ending "the use of the word 'credibility'...to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec,* 656 Fed. Appx. 113, 119 n.1 (6th Cir. 2016). Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r of Soc. Sec.*, WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), report and recommendation adopted, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

In light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Id*.

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. *Hoffman v. Comm'r of Soc. Sec*., 2019 WL 697788, *5 (S.D. Ohio Feb. 20, 2019). The ALJ must first determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id*. (citing 20 C.F.R. § 405.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-8).

The ALJ extensively discussed these factors in evaluating the intensity, persistence, and functional limitations caused by Jidas's severe impairments in

light of the objective medical evidence and other evidence of record in existence prior to the expiration of her DLI.  As the ALJ explained in her decision, Jidas routinely told her treating physicians that she was doing well, and she had a fairly quick improvement of her fatigue with the use of Adderall as prescribed by her primary care physician.  (Tr. 16).  Notably, by January 2011, Jidas indicated that she was doing much better with regard to fatigue and myalgias and made similar reports at subsequent office visits with her doctors.  (Tr. 16).  The ALJ appropriately observed that the significant and sustained improvement in her symptoms with the use of Adderall and a lack of adverse side effects from that treatment weighed against a finding of disability.  (Tr. 16).  The ALJ also pointed out that in January 2012, Jidas reported that she was able to walk for 15 to 30 minutes at one time and repeatedly lift her 14-month-old granddaughter even though she had recently hurt her back in a car accident.  (Tr. 16).  This supports the ALJ's conclusion that her endurance for these activities is inconsistent with her allegations of debilitating impairments.  (Tr. 16).  The medical records show that Jidas did not follow up as advised for farther evaluation and care of her acute back pain following the motor vehicle accident, which the ALJ observed tended to indicate that her pain was not as severe and limiting as she claims.  (Tr. 16).  When she returned to see her primary care physician for her annual physical ten months after hurting her back, she reported some back pain and other aches as well as

fatigue, but she denied exercise intolerance, which also suggests, as the ALJ observed, that her symptoms would not have precluded her from even light work prior to the expiration of her date last insured. (Tr. 16). Thus, the ALJ's assessment of the factors in SSR 16-3p is supported by substantial evidence in the record.

The Commissioner correctly points out that Jidas merely cites her own testimony about her pain and fatigue and Dr. Moscovic's opinion to support her argument. This approach is unavailing because the undersigned has already concluded that the ALJ's determination to give Dr. Moscovic's opinion only some weight is supported by substantial evidence. And, as discussed in detail above, the ALJ's assessment of the intensity, persistence, and functional limitations caused by Jidas's severe impairments in light of the objective medical evidence and other evidence of record prior to the expiration of her DLI is also supported by substantial evidence. Accordingly, the undersigned finds no basis to disturb the ALJ's findings regarding Jidas's subjective symptoms.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 26, 2019          s/Stephanie Dawkins Davis
                                 Stephanie Dawkins Davis
                                 United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 26, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov